**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**

MARLON DEAN, JEANNE DEAN, AND
DANIEL ANDERSON                                    PLAINTIFFS

VERSUS                          CIVIL ACTION NO. 5:08cv157-DCB-JMR

PETER WALKER, INDIVIDUALLY AND
AS SHERIFF OF JEFFERSON COUNTY,
MISSISSIPPI; TERRY WARE AND GLYNN
HOLIDAY, INDIVIDUALLY AND AS
DEPUTY SHERIFFS OF JEFFERSON
COUNTY; JEFFERSON COUNTY, MISSISSIPPI;
BARRY WHITLOCK                                     DEFENDANTS


**OPINION & ORDER**

This cause is before the Court on the defendants' Motion for Summary Judgment [**docket entry no. 27**] and Motion to Strike [**docket entry no. 50**]. Having carefully considered the motions, responses thereto, and the applicable law, the Court finds and orders as follows:

**I. BACKGROUND AND PROCEDURAL HISTORY**

The plaintiffs in this case are Marlon Dean, Jeanne Dean, and Daniel Anderson (collectively known as "plaintiffs").[1] They commenced this action on February 7, 2008, in the Circuit Court of Jefferson County, Mississippi, against Peter Walker, individually and as sheriff of Jefferson County, Mississippi; Terry Ware and

---

[1] Marlon Dean and Jeanne Dean are husband and wife. Jeanne Dean was not in the automobile accident that is the subject of this case. Rather, Jeanne Dean alleges that she has suffered mental anguish and loss of consortium resulting from the physical injuries her husband incurred from the accident.

Glynn Holiday, individually and as deputy sheriffs of Jefferson County; Jefferson County, Mississippi (collectively known as "defendants"); and Barry Whitlock (hereinafter "Whitlock"). On March 7, 2008, the defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1441, et seq. and asserted the Court's jurisdiction under 28 U.S.C. § 1331.

This action originated from an automobile accident on February 15, 2007, between Whitlock and Marlon Dean. Whitlock, who had been arrested for a DUI, was in the Jefferson-Franklin Correctional Facility on February 15, 2007, when he escaped from Jefferson County Sheriff's Department custody. Whitlock had been in the lobby of the sheriff's department in leg irons waiting to be transported to the Justice Court on the DUI charge. He was not handcuffed, and was only restrained by leg irons. While Deputy Ware was completing the required paper work for the transport, Whitlock exited the Sheriff Department's lobby into the department's vehicle parking lot. He then commandeered a patrol car and sped away. Deputy Ware was alerted that Whitlock was escaping and attempted to stop the vehicle by grabbing onto the side of the car. The deputy was thrown from the vehicle when Whitlock accelerated on to Highway 33. Thereafter, Chief Deputy Glynn Holiday, who was at the sheriff's department at the time of the escape, pursued Whitlock in one patrol car while Sheriff Peter

Walker and Deputy Ware pursued Whitlock in a second patrol car.[2] The defendants assert that, while traveling south on Highway 33, Sheriff Walker attempted to end the chase by passing Whitlock's vehicle and then slowing down in front of Whitlock in an attempt to force Whitlock to stop. Whitlock then passed Sheriff Walker by going off the right side of the road and re-entering the road in front of Sheriff Walker. Upon re-entering the road, Whitlock lost control of the vehicle, crossed over the center line and collided with a vehicle driven by Marlon Dean and a passenger, Daniel Anderson.

The plaintiffs assert that there are conflicting facts regarding how the accident occurred. They claim that the defendants version of the facts - that Sheriff Walker passed Whitlock and then Whitlock lost control of his vehicle while passing Sheriff Walker - does not align with Marlon Dean's version of the facts. The plaintiff's assert that Marlon Dean saw all of the vehicles traveling toward him in a straight line and then the lead vehicle, Whitlock, lost control and came over into Marlon Dean's lane causing the accident. The plaintiffs also allege that Sheriff Walker's vehicle bumped Whitlock's vehicle from behind causing Whitlock to lose control and cross over into Marlon Dean's traffic lane. Therefore, the plaintiffs allege there is a genuine

---

[2] Sheriff Walker was driving and Deputy Ware was the passenger.

3

issue of material fact at issue in this case as to how the accident occurred and summary judgment should be denied.

A witness to the chase, Karl Pierce, stated that he was parked at his body shop on Highway 33 when he saw three Jefferson County Sheriff's vehicles pass. In his opinion, they were driving in excess of the speed limit. He saw one Jefferson County vehicle pass the other two. He also witnessed another car pull to the side of the road to avoid a collision with the three patrol cars. Thereafter, Pierce stated that he heard one of the vehicles slam on breaks but he did not see the accident.

After the collision, Marlon Dean and Anderson were trapped in their vehicle for a significant amount of time. The Jefferson County jaws-of-life apparatus, which was necessary to remove them from the vehicle, malfunctioned several times increasing the amount of time Dean and Anderson were trapped. Anderson and Dean were both injured in the accident and Dean is now permanently paralyzed. As a result of their injuries, the plaintiffs are seeking monetary damages for physical, mental, and emotional pain and suffering along with lost wages, medical bills, nursing care, and loss of the enjoyment and quality of life.

In the Complaint, the plaintiffs assert state law and federal law claims against the defendants. Sheriff Walker and Deputies Ware and Holiday (hereinafter known as the "individual defendants")

are sued in their official and individual capacities.[3]  The state law claims are asserted pursuant to Mississippi Code Annotated § 11-46-1 et seq., otherwise known as the Mississippi Tort Claims Act ("MTCA").  Specifically, the plaintiffs allege that the individual defendants acted in gross disregard of the rights and safety of plaintiffs and with reckless indifference in failing to maintain proper security over Whitlock at the Sheriff's Department, failing to operate patrol cars at a reasonable safe speed, improper initiation of a high-speed vehicular pursuit, and lack of due regard for the safety of other drivers.  The plaintiffs allege that Sheriff Walker and Jefferson County acted with deliberate indifference and reckless disregard in failing to properly train the deputies regarding a high-speed chase, failure to train the deputies regarding inmate transfer, and failure to properly maintain life-saving equipment.  Lastly, the plaintiffs allege that Sheriff Walker and Jefferson County are liable for all actions of the other defendants under the doctrine of *respondeat superior*.

The alleged federal law violations consist of a claim that the defendants violated 42 U.S.C. § 1983 by depriving the plaintiffs of their due process rights under the Due Process Clause of the 14th Amendment of the United States Constitution.  Specifically, the plaintiffs allege that the actions of the defendants "were taken

---

[3] "Individual defendants" does not include Barry Whitlock because he did not join in the Motion for Summary Judgment.

under the color of state law, with deliberate indifference that 'shocks the conscience' and were in furtherance of official policy and/or custom" of defendants Sheriff Walker and Jefferson County.

As stated previously, the defendants removed this action to the Federal District Court asserting federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331. On June 23, 2008, the defendants filed the Motion for Summary Judgement asserting qualified immunity on behalf of the individual defendants. Jefferson County joined the Motion asserting immunity pursuant to MTCA, but only to the extent of the state law claims. Thus, this Opinion and Order does not address the section 1983 federal law claims asserted against Jefferson County nor any claims asserted against Barry Whitlock.

In particular, the individual defendants argue that they acted objectively reasonable in their pursuit of Whitlock, and the plaintiffs cannot show that the individual defendants violated any clearly established constitutional right. The defendants assert that even if all of the allegations by the plaintiffs are taken as true, no clearly established constitutional duty is implicated under the circumstances presented. Sheriff Walker asserts that he is entitled to qualified immunity regarding the plaintiffs' claims of failure to train and supervise. In addition, the defendants, assert that the plaintiffs' claims are barred by the MTCA because the defendants did not act with reckless disregard. Finally, the

defendants assert that the "public duty doctrine," which prevents public officials from being held liable for breaches of public duties as opposed to liability for private duties, applies in this case and bars the imposition of liability upon the defendants.

In opposition to the defendants' motion, the plaintiffs argue that there are genuine issues of material fact regarding how the accident occurred, and, therefore, the defendants' qualified immunity claims should fail and the summary judgment motion should be denied. The plaintiffs also argue that the defendants have provided no evidence that the deputies were properly trained or supervised. Additionally, the plaintiffs assert that the defendants acted with reckless disregard for the safety of the plaintiffs and, thus, the MTCA does not provide immunity for the alleged state law claims. The plaintiffs also argue that the "public duty doctrine" is inapplicable to the instant case because the defendants were directly responsible for the injuries incurred by the plaintiffs and the defendants allowed Whitlock to escape. The plaintiffs also ask the Court to allow for limited discovery regarding the issue of qualified immunity if the Court finds that there are no genuine issues of material fact.

After filing their Response to the defendants' Motion for Summary Judgment on July 14, 2008, the plaintiffs filed a Supplement to Plaintiffs' Opposition [docket entry no. 49] and an Affidavit of Melvin L. Tucker [docket entry no. 48] on February 2,

2009.  In the affidavit, Melvin L. Tucker (hereinafter "Tucker"), who was retained by plaintiffs' counsel as an expert to analyze the accident, states that in his opinion Deputy Ware violated accepted protocol by not handcuffing Whitlock and allowing him to escape, and the individual defendants acted with reckless disregard and in violation of Jefferson County Sheriff's Department regulations in their pursuit of Whitlock.

On February 9, 2009, the defendants filed a Motion to Strike Tucker's Affidavit and the plaintiffs' Supplemental Reply Memorandum from consideration arguing that the documents were untimely filed pursuant to Uniform District Court Rule 7.2 and the affidavit consists of only inadmissible legal conclusions.  The plaintiffs argue that the affidavit is timely pursuant to Federal Rule of Civil Procedure 6(c) and 56(c) because it was filed at least one day before a hearing, although there is no hearing scheduled in this case, and prior to the grant or denial of the summary judgment motion.  These motions and all responses thereto are now before the Court.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is apposite "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law." Fed. R. Civ. P. 56(c).[4]  The party
moving for summary judgment bears the initial responsibility of
apprising the district court of the basis for its motion and the
parts of the record which indicate the absence of a genuine issue
of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323
(1986).

"Once the moving party presents the district court with a
properly supported summary judgment motion, the burden shifts to
the non-moving party to show that summary judgment is
inappropriate."  Morris v. Covan World Wide Moving, Inc., 144 F.3d
377, 380 (5th Cir. 1998).  "The evidence of the non-movant is to be
believed, and all justifiable inferences are to be drawn in his
favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).
But the non-movant must "do more than simply show that there is
some metaphysical doubt as to the material facts."  Matsushita
Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).
Moreover, "[t]he mere existence of a scintilla of evidence is
insufficient to defeat a properly supported motion for summary
judgment."  Anderson, 477 U.S. at 252.  The non-movant must instead
come forward with "specific facts showing that there is a genuine

---

[4] "A fact is 'material' if its resolution in favor of one
party might affect the outcome of the lawsuit under governing law.
An issue is 'genuine' if the evidence is sufficient for a
reasonable jury to return a verdict for the non-moving party."
Ginsberg 1985 Real Estate Partnership v. Cadle Co., 39 F.3d 528,
531 (5th Cir. 1994) (citations omitted).

issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is properly rendered when the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### III. ANALYSIS

### 1. The Defendants' Motion to Strike

The defendants filed a Motion to Strike plaintiffs Supplemental Reply Memorandum in Opposition to Defendants' June 2008 Motion for Summary Judgment and Affidavit of Melvin L. Tucker. The defendants argue that the reply memorandum and the affidavit were untimely filed pursuant to Federal Rule of Civil Procedure 6(c) and Uniform District Court Rule 7.2 and that the affidavit presents legal conclusions in violation of Federal Rule of Evidence 704. Thus, the defendants ask the Court to strike both documents from the record.

In regard to the timeliness of both filings, Federal Rule of Civil Procedure 6(c) provides that "[a]ny affidavit supporting a motion must be served with the motion[]" and "any opposing affidavit must be served at least 1 day before the hearing." Rule 56(c) states that "[t]he motion must be served at least 10 days before the day set for the hearing[]" and "[a]n opposing party may serve opposing affidavits before the hearing day." Additionally, Uniform Court 7.2(C) states that "the original of any response to

10

the motion, all opposing affidavits, and other supporting documents shall be filed with the clerk of court." Rule 7.2(D) further provides that respondent's counsel has ten days to file a reply memorandum to an original motion.

The plaintiffs argue that the Supplemental Reply Memorandum and Affidavit are timely because no hearing was set for this case and the rules provide that affidavits may be filed "at least 1 day before the hearing." The plaintiffs also rely on <u>Estate of Sturges ex rel. Anderson v. Moore</u>, 73 Fed. Appx. 777, 2003 WL 22100834 (5th Cir. 2003) for their argument that the documents were timely. In <u>Moore</u>, the respondent filed a Rule 59(c) motion because the court refused to consider an expert affidavit filed by the respondent in deciding a summary judgment motion. <u>Id</u>. The affidavit was filed three weeks prior to the district court's decision and no motion to strike was filed by the opposition. <u>Id</u>. Thus, the Fifth Circuit reversed the district court and held that the defendants would not suffer unfair prejudice if the case is reopened and the affidavit considered. <u>Id</u>.

Although the facts in the instant case do differ from those in <u>Moore</u> because the defendants did file a Motion to Strike, the Court is reluctant to strike the entire affidavit and Reply Memorandum in light of the fact that their admittance will not cause the defendants to suffer unfair prejudice. As a result of the Fifth Circuits opinion in <u>Moore</u> and because the Reply Memorandum offers

no new arguments that have not been presented in previous filings by the plaintiffs, the Court finds no reason to strike the Supplemental Reply Memorandum. Thus, the defendants Motion to Strike the Plaintiffs' Reply Memorandum filed on February 2, 2009 is denied.

The defendants also argue that the affidavit should be stricken because it provides legal conclusions regarding the issue of qualified immunity which are issues of law reserved for the court. <u>Williams v. Bramer</u>, 180 F.3d 699, 703 (5th Cir. 1999). The Fifth Circuit has repeatedly held that expert testimony offering conclusions of law is inadmissible. <u>Snap-Drape, Inc. v. C.I.R.</u>, 98 F.3d 194, 198 (5th Cir. 1996)(citations omitted); Fed. R. Evid. 704(a). After thorough review of the affidavit, the Court finds that the following statements made by Tucker are conclusions of law regarding the defendants qualified immunity or immunity from liability pursuant to the Mississippi Tort Claims Act.

1) Other reasonable, prudent and properly trained officers would not have acted in the same manner as Deputy Terry Ware in allowing Barry Whitlock to be out of his immediate presence. Affidavit, ¶ 18.

2) In my opinion the manner in which Sheriff Walker operated his vehicle during the pursuit of Barry Whitlock demonstrated a reckless disregard for the safety of innocent persons operating their vehicles on the highway on the date of this incident. Affidavit, ¶ 20.

3) During the pursuit Sheriff Walker passed Chief Deputy Holiday's patrol car and the patrol car being driven by Whitlock in a reckless manner. Affidavit, ¶ 20.

4) It is my opinion that Sheriff Walker's intentional use of a

"pursuit intervention technique" while operating at high speeds, or in the alternative, his intentional "ramming" of the car driven by Whitlock while operating at high speed, was conduct that a reasonable person would consider as "shocking to the conscience." Affidavit, ¶ 22.

5) Sheriff Walker should have known that the use of a "pursuit intervention technique" or "ramming" his car into the rear of the car driven by Whitlock at high speeds, was an intentional use of deadly force and not justified under the circumstances, and other reasonable, prudent and properly trained law enforcement officers would not have taken such action in the same, or similar, circumstances. Affidavit, ¶ 22.

6) Sheriff Walker's efforts to utilize a "rolling roadblock" at speeds in excess of 55 miles per hour on a two lane road demonstrated a reckless disregard for the safety of the motoring public and other properly trained, prudent and reasonable officers would not have acted in the same manner if presented with the same, or similar, circumstances. Affidavit, ¶ 23.

To the extent that the affidavit of Melvin L. Tucker presents the legal conclusions numbered above, the Court strikes those conclusions. <u>Jones v. Reynolds</u>, 2008 WL 2095679, *12 (N.D. Miss. 2008). Where relevant, all other statements presented in the affidavit will be considered by the Court in its summary judgment determination. As a result, the defendants' Motion to Strike the Affidavit of Melvin L. Tucker is partially granted and partially denied.

## 2. *Federal Qualified Immunity and Section 1983 Claims Against Sheriff Walker and Deputies Ware and Holiday in Their Individual Capacities*

The plaintiffs allege that the individual defendants' pursuit of Whitlock in a high-speed police chase, which resulted in a car accident causing plaintiffs' injuries, is an action taken "under

color of state law, with deliberate indifference that 'shocks the conscience' and [was] in furtherance of an official policy and/or custom of the defendants Peter Walker of the Jefferson County Sheriff's Department and Jefferson County that deprived the plaintiffs" of their due process rights under the 14th Amendment and 42 U.S.C. § 1983. Complaint ¶ 25. The plaintiffs have asserted these claims against the defendants in their individual and official capacities. In Hafer v. Melo, 502 U.S. 21, 25 (1991), the Supreme Court held that section 1983 claims against state officials in their official capacity are considered actions against the entity of which the officer is an agent. Therefore, the plaintiffs' claims against the individual defendants in their official capacity are merged with the plaintiffs' claims against Jefferson County. Because Jefferson County did not join the Motion for Summary Judgment as to the federal claims asserted against it, this Opinion and Order does not address the section 1983 official capacity claims asserted against the individual defendants nor the section 1983 claims asserted against Jefferson County.

The individual defendants assert the affirmative defense of qualified immunity as to the plaintiffs' section 1983 claims. "Qualified immunity shields government officials from civil damages liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pasco v. Knoblauch, 566 F.3d

572, 578 (5th Cir. 2009)(citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)).  More specifically, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . in the light of pre-existing law the unlawfulness must be apparent." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987).  The Fifth Circuit has held that "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*." <u>Knoblauch</u>, 566 F.3d at 578-79 (citing <u>Pierce v. Smith</u>, 117 F.3d 866, 882 (5th Cir. 1997)(emphasis in original)(internal quotation and citation omitted)).  Moreover, "qualified immunity 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" <u>Estate of Davis v. City of North Richland Hills</u>, 406 F.3d 375, 380 (5th Cir. 2005).

In <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001), the Supreme Court mandated a two-part test for deciding qualified immunity claims: (1) whether facts alleged or shown by the plaintiff make out the violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct.  More recently, the Supreme Court revised its approach in <u>Saucier</u> and stated that courts are free to exercise

their discretion in deciding "which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 129 S.Ct. 808, 818 (2009); see also Knoblauch, 566 F.3d at 579 (stating that if an officer's conduct did not violate clearly established law, qualified immunity will shield the officer from liability). Thus, if the individual defendants' actions did not violate a clearly established law, qualified immunity will shield them from liability.

In the instant case, the plaintiffs assert that the facts surrounding the accident are in dispute, and, therefore, the Court cannot make a determination of the reasonableness of the individual defendants' actions. Nonetheless, the plaintiffs argue that if the defendants intentionally hit or rammed Whitlock's vehicle, their actions were objectively unreasonable and violated clearly established law.

In Scott v. Harris, 550 U.S. 372, 386 (2007), the Supreme Court held:

> A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death.

In Scott, the officer pursued a fleeing suspect down a two-lane highway at speeds above 85 mph for over 10 miles before the chase ended with the officer ramming the suspect's bumper and causing the suspect to lose control of the vehicle and overturn down an

embankment.  <u>Id</u>. at 375.  The suspect was rendered quadriplegic and he filed a section 1983 suit against the officer.  Although no pedestrians or vehicles were immediately present at the time the officer rammed the suspect's vehicle, pedestrians and other vehicles were encountered earlier in the chase.  <u>Id</u>. at 379-80. The Court recognized that all police chases involve the risk of potential harm to the public, suspects, and police.  <u>Id</u>. at 383-84. Nonetheless, the Court stated that "we are loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive so *recklessly* that they put other people's lives in danger."  <u>Id</u>. at 385.  The Supreme Court held that the officer acted reasonable because ramming the suspect and ending the chase "was *certain* to eliminate the risk that respondent [suspect] posed to the public."  <u>Id</u>. at 385.  In determining the reasonableness of the officer's actions, the Court intimated that it was the suspect who created the danger to the public and himself and the officer was forced to weigh the dangers associated with ending the chase or allowing it to continue.  Despite that no bystanders or other motorists were immediately present when the officer rammed the suspect, the Supreme Court concluded that the fleeing suspect "posed an actual and imminent threat to the lives of any pedestrians *who might have been present*, to other civilian motorists, and to the officers involved in the case."  <u>Id</u>. at 384 (emphasis added).  Thus, in <u>Scott</u> the Court was focused on the

potential harm that could befall bystanders rather than whether bystanders or other motorist were present when the officer rammed the suspect.  See Knoblauch, 566 F.3d at 581 (stating that "the holding in Scott was not dependant on the actual existence of bystanders--rather, the Court was also concerned about the safety of those who could have been harmed if the chase continued).  In light of the Supreme Court's holding in Scott, this Court finds there is a clearly established law regarding police chases.

Nonetheless, the Supreme Court decided Scott in April 2007 and the accident in the case at bar occurred in February 2007. Therefore, this clearly established law cannot apply to the instant case, but the Court may use this precedent as guidance in its analysis of the reasonableness of the defendants' actions.

When no clearly established law exist, the court must determine if the officers acted objectively reasonable.  Knoblauch, 566 F.3d at 580.  In determining the reasonableness of an officer's actions, the court must balance "the nature and quality of the intrusion of the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."  Id. (citing United States v. Place, 462 U.S. 696, 703 (1983)).

In the instant case, Whitlock escaped police custody, commandeered a patrol car, and led the police on a high-speed chase down a public highway.  In Knoblauch, a suspect believed by the

officer to be intoxicated, led the police on a high-speed chase on a "rural, curvy two-lane road at speeds in excess of ninety miles per hour." Id. at 575. Instead of ending the pursuit as directed by his supervisor, the officer, Knoblauch, terminated the chase by bumping the suspect from behind causing him to crash. Id. The Knoblauch court stated that the officer "made a quick decision, under stressful circumstances, to try to end the serious danger [suspect] Pasco posed" before potentially tragic situations occurred. Id. at 581. The Knoblauch court reasoned that it was reasonable for the officer to believe that the fleeing suspect "would continue to pose a danger to anyone he might encounter" and "though the officer was stuck between 'two evils' in either possibly harming the fleeing suspect or possibly allowing innocent parties to be injured, it was reasonable for the officer to choose to end the chase in light of the relative culpability of those at risk." Id. In Knoblauch, the Fifth Circuit relied on Scott in determining that the reasonableness of the officer's actions depended not only on "the number of lives potentially at risk, but also [on] the relative culpability of those threatened." Knoblauch, 566 F.3d at 581.

The individual defendants' actions in the case at bar are similar to the actions of the officer in Knoblauch. In the instant case, the officers were forced to weigh the likelihood that Whitlock, who had commandeered a patrol car, would harm innocent

bystanders or that Whitlock or innocent bystanders would be injured in a police chase. Tragically, this chase ended with the plaintiffs being injured. Concerning Deputies Holiday and Ware, the Court finds that both are entitled to qualified immunity. Deputy Ware was only a passenger in the patrol car driven by Sheriff Walker, and the plaintiffs have presented no evidence that he contributed to the cause of the accident in which the plaintiffs were injured. Deputy Holiday was involved in the high-speed pursuit but the plaintiffs only allege that he followed Whitlock in the chase. The plaintiffs have presented no evidence that Deputy Holiday bumped Whitlock, passed Whitlock, or did anything other than pursue him in excess of the speed limit. Therefore, the Court finds that Deputies Ware and Holiday acted with objective reasonableness and are entitled to qualified immunity.

As to Sheriff Walker, the Court is unable to determine from the record evidence whether there is a genuine issue of material fact. That is, the record is lacking specific facts regarding the actual cause of the accident and whether Sheriff Walker was aware of the presence of pedestrians and/or oncoming traffic at the time the accident occurred. See Knoblauch 566 F.3d at 582 (Garza, J., dissenting)(stating that record evidence did not clearly establish the distance, traffic and related conditions between suspect's car and officer's car at the time of accident and there was conflicting evidence whether the officer bumped the suspect causing the

accident). For these reasons, this Court holds in abeyance its ruling whether Sheriff Walker is entitled to qualified immunity in his individual capacity until the parties are able to produce discovery on these limited issues.

The plaintiffs also argue that because the defendants violated administrative police pursuit protocol, their actions were objectively unreasonable. However, in a court's determination of whether qualified immunity applies, an officer's actions contrary to supervisory orders or department protocol are "constitutionally irrelevant." Knoblauch, 566 F.3d at 579. In Knoblauch, the Fifth Circuit stated:

> Violations of non-federal laws cannot form a basis for liability under § 1983, and qualified immunity is not lost because an officer violates department protocol. See, e.g., Collins v. City of Harker Heights, 503 U.S. 115, 119, 112 S.Ct. 1061, 117 L.Ed. 2d 261 (1992)(finding that § 1983 does not provide a remedy if there is no violation of federal law); Davis v. Scherer, 468 U.S. 183, 194 (1984)(noting that officials do not lose qualified immunity where they violate administrative directives); Scott, 127 S.Ct. at 1773 n.1 (observing that "it is irrelevant to our analysis whether [Officer] Scott had permission to take the precise actions he took" when he bumped the fleeing suspect off the road).

566 F.3d at 579. Thus, qualified immunity is not lost due to the defendants' possible violation of administrative police pursuit protocol.

Lastly, the plaintiffs argue that Deputy Ware negligently left Whitlock unattended which allowed Whitlock to escape, commandeer a patrol car, and eventually injure the plaintiffs. The plaintiffs

sued Deputy Ware in his individual capacity, and Deputy Ware claims qualified immunity. In <u>Rios v. City of Del Rio, Tex.</u>, 444 F.3d 417 (5th Cir. 2006), a prisoner escaped police custody, stole a police car, and ran over a customs officer at the border. The plaintiff sued the police chief and officer that allowed the prisoner to escape. <u>Id</u>. The prisoner had escaped police custody on previous occasions and was known by officers as "houdini." <u>Id</u>. at 421. The arresting officer "improperly left the prisoner . . . in the backseat of his patrol vehicle while the keys were in the ignition and the engine running while he visited with a person who lived in the neighborhood." <u>Id</u>. The prisoner escaped, fled from the police, and struck the plaintiff which resulted in severe injuries to the plaintiff. <u>Id</u>. The Fifth Circuit held that it had not accepted the "state-created danger theory" and even if it had, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." <u>Id</u>. at 424-425 (citing <u>Deshaney v. Winnebago County</u>, 489 U.S. 189, 109 S.Ct. 998, 1004 (1989). The court further stated that it "rejected section 1983 liability in instances where the alleged deliberate indifference of police allowed a prisoner or prisoners to injure an officer." <u>Id</u>. at 424 (citations omitted). Therefore, the court held that the officer's actions did not violate the constitutional rights of the plaintiff.

The facts in the instant case mirror those in <u>Rios</u>. Deputy

Ware left Whitlock unattended and Whitlock, although shackled with leg irons, escaped, commandeered a patrol car, and subsequently injured innocent bystanders in fleeing from the police. Although Deputy Ware's actions may amount to simple negligence, they do not "shock the conscience" of the court nor were they objectively unreasonable. Because the actions of Deputy Ware are less careless than the actions by the officer in Rios, the Court finds that there is no constitutional violation on the part of Deputy Ware, and he is entitled to qualified immunity.

### 3. Failure to Train and Supervise and Respondeat Superior Claims

The plaintiffs alleged that Sheriff Walker, in his individual and official capacity, is liable for damages resulting from a failure to train and supervise Deputies Ware and Holiday. The courts have determined that neither *respondeat superior* nor vicarious liability claims exists under section 1983. Rios, 444 F.3d at 425; Estate of Davis, 406 F.3d at 381. Rather, "[a] federal claim for failure to train and supervise requires that the plaintiff demonstrate (1) inadequate training procedures; (2) which caused the injury; and (3) deliberate indifference of municipal policymakers." Estate of Davis, 406 F. 3d at 481; Grosch v. Tunica County Miss., 2008 WL 114773, *8 (N.D. Miss. 2008)(citation omitted). Stated differently, "supervisor liability under section 1983 requires a showing of the supervisor's 'deliberate indifference to the known or obvious fact that such constitutional

violations would result' and '[t]hat generally requires that a plaintiff demonstrate at least a pattern of similar violations.'" Rios, 444 F.3d at 417(citing Johnson v. Deep East Texas Regional Narcotics, 379 F.3d 293, 309 (5th Cir. 2004). To satisfy the "deliberate indifference" standard, the plaintiff "must demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.'" Estate of Davis, 406 F.3d at 381. Mere ineptitude or "ineffective and negligent" actions by a supervisor do not rise to deliberate indifference. Id.

Here the plaintiffs have alleged no prior incidents in which any prisoner escaped, commandeered a police car, or that any prior police pursuit resulted in injury to another person. The plaintiffs have alleged no facts or patterns of conduct that indicate that Sheriff Walker acted with the deliberate indifference necessary for supervisor liability. Id. at 427. Moreover, the Court has not found that the officers violated the plaintiffs' constitutional rights, which is necessary for a finding of supervisor liability. Id. at 425-26 (holding that there must be a constitutional violation by the police officer in order to hold a supervisor liable for plaintiff's injuries). For these reasons, the Court finds that qualified immunity shields Sheriff Walker from supervisor liability for failure to train or supervise Deputies Ware and Holiday.

## 4. *Mississippi Tort Claims Act*

The plaintiffs have alleged the defendants "acted in gross disregard for the rights and safety of others and Plaintiffs" and the gross misconduct of the defendants was due to a reckless indifference to the consequences of their actions. As stated above, the plaintiffs sued the individual defendants in their individual and official capacities. For claims brought under the MTCA, "[a] suit against a public official in his official capacity is nothing more than a suit against the entity." Mosby v. Moore, 716 So. 2d 551, 557 (Miss. 1998)(citing Hafer v. Melo, 502 U.S. 21, 25 (1991)). Therefore, for purposes of this Opinion, the plaintiffs claims against the individual defendants in their official capacities will be treated as claims against Jefferson County.

Pursuant to the Mississippi Tort Claims Act, § 11-46-9(1)(c), immunity is provided to "government entities and employees that act within the course and scope of employment duties." City of Jackson v. Brister, 838 So. 2d 274, 278 (Miss. 2003). Specifically, MTCA § 11-46-9(1)(c), (d) and (g) state as follows:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> (c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in ***reckless disregard*** of the safety and well-being of any

25

person not engaged in criminal activity at the time of injury

(d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused.

(g) Arising out the exercise of discretion in determining whether or not to seek or provide the resources necessary for the purchase of equipment, the construction or maintenance of facilities, the hiring of personnel and, in general, the provision of adequate governmental services . . .

(emphasis added). "[R]eckless disregard is a higher standard than gross negligence." Miss. Dept. of Public Safety v. Durn, 861 So. 2d 990, 994 (Miss. 2003). In the context of the MTCA, "reckless must connote 'wanton and willful,' because immunity lies for negligence." Id. at 995. "'Reckless disregard usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow.'" Id. (citation omitted). Because the plaintiffs alleged claims against the defendants in their individual and official capacities under the MTCA, the Court will now address those claims seperately.

1. Individual Capacity Claims

The plaintiffs sued the individual defendants for multiple violations in their individual capacities. Under the MTCA, individual defendants have the advantage of "a rebuttable presumption that any act or omission of theirs which takes place within the time and at the place of their employment is within the 'course and scope of [their] employment.'" Moore v. Carroll

<u>County, Miss.</u>, 960 F.Supp. 1084, 1088 (N.D. Miss. 1997)(citing Miss. Code Ann. § 11-46-5(3)). Pursuant to Miss. Code Ann. § 11-46-5(2), the only conduct to be considered outside of the "course and scope of employment" is "fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations."

In the instant case, the plaintiffs have not alleged nor presented facts that the individual defendants were acting outside the "course and scope of [their] employment" when Whitlock escaped or the accident occurred. <u>Id</u>. The undisputed evidence indicates that all officers were on duty at the time of Whitlock's escape and during the pursuit of Whitlock. The plaintiffs have failed to establish or plead that the individual defendants actions amount to "fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations." Therefore, the Court finds that the individual defendants are immune from individual liability pursuant to the MTCA.

2. Official Capacity Claims and Claims Against Jefferson County

If the Court finds that the plaintiffs have shown genuine issues of material fact as to whether the defendants in their official capacities acted with reckless disregard, summary judgment shall be denied. The Mississippi Supreme Court has stated that a finding of "reckless disregard" is proper when the "'conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the

27

high probability of harm involved." Id. (citation omitted).  In determining whether a police officer acted in reckless disregard of others while pursuing a third party, the court should consider:

1) *Length of chase.*  In the instant case, the facts indicate that the chase started at approximately 9:50 a.m.  No end time is given.  However, Deputy Ware's accident report states that the accident time was at approximately 10:05 a.m.

2) *Type of neighborhood.*  The pursuit took place on Highway 33 South.  The vehicles did pass some homes and businesses, but the extent of neighborhood development is not in the record.

3) *Characteristics of the streets.*  Highway 33 is a two-lane highway.

4) *The presence of vehicular or pedestrian traffic.*  One witness stated that he saw a vehicle pull over on the side of the road to avoid a collision and then the accident occurred.  The presence of other vehicles or pedestrians is unknown.

5) *Weather conditions and visibility*.  It was daytime and dry.

6) *The seriousness of the offense for which the police are pursuing the vehicle.*  Whitlock had been arrested for a DUI offense.  The officers were pursuing him because he had escaped custody during transport to Justice Court and commandeered a sheriff's department patrol car.

Durn, 861 So. 2d at 995 (citing Brister, 838 So. 2d at 280).

In the instant case, the Court finds that the plaintiffs have plead specific facts which present a genuine issue of material fact as to whether the officers acted with reckless disregard in the pursuit of Whitlock and in allowing Whitlock to escape.  The plaintiffs have presented undisputed facts that the officers violated Jefferson County Sheriff's Department rules and regulations in not placing Whitlock in handcuffs during his

transport, violating posted speed limits and other traffic laws, not following the primary pursuit vehicle at a safe distance, not using sirens, and that Whitlock's original offense was not a "serious, life-threatening felony."  Pl. Resp. pp. 5-7.  The plaintiffs also presented evidence that the officers had other means of ending the pursuit rather than attempting a dangerous police maneuver on the highway.  More importantly, the defendants have not denied these allegations but rather asserted that their actions do not amount to reckless disregard under the law.

In Durn, the Mississippi Supreme Court held that an officer acted in reckless disregard of the safety and well-being of others when during the pursuit of a suspect, he attempted to pass a vehicle that was turning, which caused the turning vehicle to collide with the officer.  861 So. 2d at 996.  The court stated that the officer "appreciated the unreasonable risk associated" with his actions "yet still acted in deliberate disregard of [the] risk."  Id.  Moreover, in City of Jackson v. Brister, the court found that officers had acted with reckless disregard in pursuing a suspect that ended with the suspect colliding with and killing a third party.  838 So. 2d at 280.  In Brister, the officers had responded to a call from a bank requesting assistance with a possible check forging suspect.  Id.  The suspect evaded the officers in the parking lot of the bank and the officers engaged in a high-speed pursuit.  Id.  The court held that "the officers

initiated a high-speed chase with 'conscious indifference' knowing they had violated Order 600-20 [department pursuit protocol] which was the existing governing policy of the police department . . . and should have reasonably expected the possibility of adverse consequences including a fatal accident."[5]  Because the facts of the instant case are strikingly similar to those in <u>Brister</u> and <u>Durn</u>, the Court finds that the plaintiffs have shown a genuine issue of material fact as to whether the defendants acted with reckless disregard.  Therefore, Jefferson County's Motion for Summary Judgment as to plaintiffs' MTCA claims regarding the escape of Whitlock and the police pursuit are denied.

As to the plaintiff claims against Sheriff Walker and Jefferson County for supervisory liability under the MTCA, the Court finds that those duties regarding the training of law enforcement officers are set forth under Miss. Code Ann. § 45-6-1 <i>et seq</i>. <u>Moore v. Carroll County, Miss.</u>, 960 F.Supp. 1084, 1093-94 (N.D. Miss. 1997).  Under § 11-46-9(1)(d), government entities and officials are exempt from the "exercise or performance or the failure to exercise or perform a discretionary function or duty. . . whether or not the discretion be abused."  The Court finds that

---

[5] In <u>Brister</u>, General Order 600-20 prohibited officers from engaging in a pursuit unless they knew that a felony had been committed and had probable cause to believe that the individual who committed the felony and the suspect's escape is more dangerous to the community than the risk posed by the pursuit.  838 So. 2d at 280.

the duty to train and supervise is a "discretionary" function and that whether a deputy possesses the skill and training necessary to transport prisoners or engage in high-speed pursuits "is a decision which must be left to the sound judgment and discretion of his superiors." <u>Moore</u>, at 960 F.Supp. at 1094. As a result, the Court finds that Sheriff Walker and Jefferson County are entitled to immunity against the plaintiff's claim of failure to train and supervise.

As to the plaintiffs' final claim against Jefferson County for failure to maintain operational and functioning rescue equipment, the Court finds that Jefferson County is entitled to immunity. Pursuant to Miss. Code Ann. § 11-46-9(1)(g), a governmental entity is immune from liability "[a]rising out the exercise of discretion in determining whether or not to seek or provide the resources necessary for the purchase of equipment, the construction or maintenance of facilities, the hiring of personnel and, in general, the provision of adequate governmental services . . . ." The decision whether to purchase new life-saving equipment, maintain existing equipment and hire personnel to use the equipment is discretionary and one dependant upon budgetary considerations of a governmental entity. Additionally, the plaintiffs have failed to plead facts that support a claim that they were injured by Jefferson County rescue personnel during their removal from the vehicle. Thus, the Court finds that Jefferson County is entitled

to immunity against the claim for failure to maintain operational and functioning equipment.

## IV. CONCLUSION AND ORDER

This Opinion and Order does not affect the plaintiffs' claims against Barry Whitlock as he did not join the defendants' Motion for Summary Judgment or Motion to Strike. Additionally, as previously stated, this Order does not address the section 1983 federal law claims against Jefferson County, Mississippi, as it only joined the Motion for Summary Judgment in regard to the Mississippi Tort Claims Act allegations. Furthermore, the Court holds in abeyance its ruling whether Sheriff Walker is entitled to qualified immunity pending discovery regarding the limited issues presented herein.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' Motion to Strike [docket entry no. 50] is **PARTIALLY GRANTED and PARTIALLY DENIED.**

**IT IS FURTHER ORDERED** that defendants' Motion for Summary Judgment [docket entry no. 27] as to the plaintiffs' claims pursuant to 42 U.S.C. § 1983 against Deputy Terry Ware and Deputy Glenn Holiday in their individual capacities is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendants' Motion for Summary Judgment [docket entry no. 27] as to the plaintiffs' claims pursuant to the Mississippi Tort Claims Act against Sheriff Peter Walker, Deputy Terry Ware, and Deputy Glenn Holiday in their

individual capacities is **GRANTED.**

**IT IS FURTHER ORDERED** that the defendants' Motion for Summary Judgment [docket entry no. 27] regarding claims pursuant to the Mississippi Tort Claims Act against Jefferson County, Mississippi, is **PARTIALLY GRANTED and PARTIALLY DENIED.**

**SO ORDERED** this the 15th day of December 2009.

_____s/ David Bramlette_____

**UNITED STATES DISTRICT JUDGE**
