UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

MARLON DEAN, JAMES DEAN, AND
DANIEL ANDERSON                                    PLAINTIFFS

VERSUS                          CIVIL ACTION NO: 5:08-cv-157-DCB-JMR

PETER WALKER, et al.                               DEFENDANTS

<u>**OPINION & ORDER**</u>

This matter comes before the Court on the Defendants' Motion for Summary Judgment [docket entry no. 87]. Having carefully considered said Motion, the Responses thereto, applicable statutory and case law, and being otherwise fully advised in the premises, this Court finds and orders as follows:

This action arises out of an automobile accident between the Plaintiffs and Barry Whitlock, an escaped inmate from the Jefferson-Franklin Correctional Facility in Fayette, Mississippi. The accident occurred while Defendants Sheriff Peter Walker and Deputies Terry Ware and Glenn Holliday were pursuing Whitlock in an automobile chase and Whitlock's vehicle crossed the center line of a two-lane highway to hit the Plaintiffs' vehicle head-on. In 2009, the Defendants first moved for summary judgment and this Court granted the motion with respect to: a 42 U.S.C. § 1983 claim against Deputies Ware and Holliday in their individual capacities; a Mississippi Tort Claims Act claim against Sheriff Walker, and Deputies Ware and Holliday in their individual capacities; and state law claims for supervisory liability and failure to maintain

operational and functioning rescue equipment.  Three claims[1] remain in the case: (1) a claim against Jefferson County pursuant to 42 U.S.C. § 1983 for violation of the Fourteenth Amendment; (2) a claim against Sheriff Walker in his official capacity pursuant to 42 U.S.C. § 1983 for violation of the Fourteenth Amendment; and (3) a state law claim under the Mississippi Tort Claims Act against Jefferson County, Mississippi alleging that the officers, in their official capacity, acted in "reckless disregard of the safety and well-being" of the plaintiffs.  The Defendants now move for summary judgment on all three remaining claims.

## I. Facts

According to Defendants, the relevant facts are that inmate Whitlock (who was not handcuffed but was wearing leg irons) escaped from the custody of Deputy Ware and absconded from the Jefferson-Franklin Correctional Facility in Ware's patrol car on February 15, 2007.  Sheriff Walker soon learned of the escape and went to retrieve his patrol car in order to pursue Whitlock.  In the parking lot of the jail, he saw Deputy Ware hanging from Whitlock's vehicle (the stolen patrol car) and then saw Ware thrown from the vehicle by Whitlock's erratic driving.  Sheriff Walker stopped to pick up Deputy Ware and then proceeded to pursue Whitlock down Highway 33.  Deputy Holliday had earlier left the jail in pursuit

---

[1] In its September 15, 2009, Order, the Court mistakenly stated that there were only two claims remaining in the case.

of Whitlock but Walker passed Holliday en route to Whitlock.

Once in sight of Whitlock, Sheriff Walker testified that he attempted to pass Whitlock on the left side but was unable to do so.  Sheriff Walker then tried again to pass Whitlock and was successful which resulted in Whitlock's vehicle being between Walker's patrol car and Holliday's patrol car.  Walker testified that his intent in passing Whitlock was to slow Whitlock down. Rather than slow down, Whitlock attempted to pass Sheriff Walker but Walker moved to the left slightly and Whitlock was unable to pass.  Whitlock then successfully passed Sheriff Walker's vehicle on the right side (*i.e.*, off of the road).  As Whitlock was moving back onto Highway 33 from the right shoulder, his vehicle crossed over the center line and hit the Plaintiffs' vehicle.  Sheriff Walker testified that he did not pass any oncoming traffic in his pursuit of Whitlock before he encountered the Plaintiffs.  Both Sheriff Walker and Deputy Ware testified that their vehicle never touched Whitlock's vehicle.  Walker testified that his vehicle was traveling at 55 miles per hour (the speed limit) while Ware testified that he estimated they were traveling at 60 miles per hour.

The Plaintiffs dispute the Defendants' version of the facts. Plaintiff Dean (who was driving the Plaintiffs' vehicle) testifies that as he approached on Highway 33, he saw the three patrol cars traveling in a straight line towards him.  He next saw Whitlock's

3

car "fishtail" like it had been hit from behind.  A witness, Karl
Pierce, stated in an affidavit that he saw the patrol cars pass by
and believes they were driving in excess of the speed limit.
Pierce also recalls seeing other vehicles forced from the road by
the vehicle chase.   Accordingly, the Plaintiffs point to several
disputed facts: the speed at which Sheriff Walker was pursuing
Whitlock, whether there were other vehicles on the road during the
pursuit, and whether Sheriff Walker's vehicle bumped Whitlock's
during the pursuit.

    The Plaintiffs further argue that Deputy Ware's incident
report conflicts with his deposition testimony regarding the
accident because the report states that Whitlock passed Sheriff
Walker on the left side of the road, rather than the right side of
the road.  Moreover, the Plaintiffs argue that Deputy Holliday's[2]
incident report suggests a different scenario altogether: that
Sheriff Walker pulled alongside Whitlock's vehicle, then Whitlock
went off the road and came back on sideways before hitting the
Plaintiff's vehicle.  In short, the Plaintiffs contend that summary
judgment is inappropriate because there are at least four different
stories regarding how the accident occurred (Plaintiff Dean's,
Sheriff Walker's, Deputy Ware's as reflected in his incident
report, and Deputy Holliday's).

---

       [2] Deputy Holliday died before the parties were able to take
his deposition.

## II.  Summary Judgment Standard

Summary judgment is apposite "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law.  An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party."  Ginsberg 1985 Real Estate Partnership v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted).  The party moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the non-moving party to show that summary judgment is inappropriate."  Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). But the non-movant must "do more than simply show that there is

5

some metaphysical doubt as to the material facts." <u>Matsushita</u>
<u>Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).
Moreover, "[t]he mere existence of a scintilla of evidence is
insufficient to defeat a properly supported motion for summary
judgment." <u>Anderson</u>, 477 U.S. at 252.  The non-movant must instead
come forward with "specific facts showing that there is a genuine
issue for trial."  Fed. R. Civ. P. 56(e).  Summary judgment is
properly rendered when the non-movant "fails to make a showing
sufficient to establish the existence of an element essential to
that party's case, and on which that party will bear the burden of
proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322.

## II.  Analysis

### A.  Section 1983 Claim Against Jefferson County

A local government entity may be sued "if it is alleged to
have caused a constitutional tort through 'a policy statement,
ordinance, regulation, or decision officially adopted and
promulgated by that body's officers.'" <u>City of St. Louis v.</u>
<u>Praprotnik</u>, 485 U.S. 112, 121 (1988) (quoting <u>Monell v. Dep't of</u>
<u>Social Servs.</u>, 436 U.S. 658, 690 (1978)).  Alternatively, municipal
liability may attach where the constitutional deprivation is
pursuant to a governmental custom, even if such custom has not
received formal approval. <u>Monell</u>, 436 U.S. at 690-91.  "Municipal
liability under Section 1983 requires proof of three elements: a
policymaker; an official policy; and a violation of constitutional

rights whose moving force is the policy or custom." <u>Zarnow v. City of Wichita Falls</u>, 614 F.3d 161, 166 (5th Cir. 2010) (quoting <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 578 (5th Cir. 2001)).

Jefferson County now moves for summary judgment because the Plaintiffs have not proven the second of these three elements: an official policy.  In the absence of an official policy statement, ordinance or regulation that violates the constitution (which the Plaintiffs do not allege), a plaintiff can prove the existence of a "custom" in one of two ways.  <u>Zarnow</u>, 614 F.3d at 169.  First, a pattern of unconstitutional conduct may be shown on the part of municipal actors or employees.  <u>Id.</u>  Alternatively, it may be shown that a final policymaker took a single unconstitutional action. The Plaintiffs attempt to establish a custom in the first manner, arguing that despite Jefferson County having instituted policies regarding the safe pursuit of suspects, "it has become the custom in the County, as sanctioned by Sheriff Walker, and thus imputed to the county, for these policies to be disregarded."  S.J. Opp. [docket entry no. 90] at 14.  <u>Id.</u>  The Plaintiffs do not cite to examples of when the pursuit policies were disregarded, however. The Plaintiffs further argue that the county had a policy requiring inmates to be handcuffed when they were being transferred but that it had become the custom for deputies to disregard that policy.  In support, the Plaintiffs point to testimony of Sheriff Walker that he was aware that officers sometimes disregarded the handcuff

policy.

Neither of these allegations rises to the level of a pattern of unconstitutional conduct as required for municipal liability under § 1983. "A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." <u>Zarnow</u>, 614 F.3d at 169. The Plaintiffs cannot establish such length and frequency in a course of conduct with its meager allegations that officers occasionally violated the pursuit policy and the handcuff policy. Indeed, the Plaintiffs have introduced no evidence at all with respect to other police pursuits in Jefferson County or other instances where inmates were not made to wear handcuffs. Accordingly, the Defendants' motion for summary judgment with respect to the § 1983 claim against Jefferson County must be granted.[3]

**B.    Section 1983 Claim Against Defendant Sheriff Walker**

In ruling on the Defendants' first Motion for Summary Judgment in 2009, this Court granted summary judgment as to individual capacity § 1983 claims against Deputies Ware and Holliday on the basis of qualified immunity but denied summary judgment to Sheriff Walker because the record lacked sufficient facts regarding the

---

[3] Even if the Plaintiffs had introduced sufficient evidence of a custom, as discussed below, no constitutional violation occurred in the pursuit of Whitlock and thus Jefferson County would not be liable under § 1983.

actual cause of the accident and whether Sheriff Walker was aware
of the presence of pedestrians and/or oncoming traffic at the time
the accident occurred.   After further development of the record,
Sheriff Walker again moves for summary judgment on the basis of
qualified immunity.   The Plaintiffs argue that there continue to be
factual disputes regarding precisely how the accident occurred
which preclude summary judgment.

Though there may be disputes of fact that exist between the
parties, none of these disputes are material because, even assuming
that Sheriff Walker's vehicle was traveling faster than the speed
limit and bumped Whitlock's, thereby causing it to crash into the
Plaintiffs (the version of the disputed facts most favorable to the
Plaintiffs), there is no constitutional violation.[4]   This Court's
2009 summary judgment opinion relied heavily Scott v. Harris, 550
U.S. 372, 386 (2007), but the Court is now convinced that Scott is
not controlling because it addressed a Fourth Amendment claim
whereas the Plaintiffs here assert a substantive due process claim
under the Fourteenth Amendment.   In Scott, a motorist was killed
when the police intentionally bumped the motorist's vehicle during

_____

[4] In Saucier v. Katz, 533 U.S. 194, 201 (2001) the Supreme
Court mandated a two-part test for deciding qualified immunity
claims, both parts of which must be satisfied to abrogate a
defendant's qualified immunity : (1) whether facts alleged or shown
by the plaintiff make out the violation of a constitutional right;
and (2) if so, whether that right was clearly established at the
time of the defendant's alleged misconduct.   Because there is no
Constitutional violation, this Court need not proceed to the second
step of the qualified immunity analysis.

a police pursuit and the motorist's family asserted a § 1983 against the police officers involved in the chase.  The Supreme Court reversed a denial of summary judgment for the officers, holding that "a police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." Id. at 386.  Critical to the reasoning in Scott was the fact that there was a "seizure" of the motorist's vehicle, such that the Fourth Amendment and its particular jurisprudence governed.  Id. at 381 (noting that the defendant police deputy did not contest that his decision to terminate the car chase by bumping the motorist's vehicle constituted a seizure).  Here, the Plaintiffs have not asserted a violation of the Fourth Amendment and thus the Fourth Amendment and its jurisprudence is not applicable.

Instead, the relevant precedent is County of Sacramento v. Lewis, 523 U.S. 833, 844 (1998) which addressed the claims of a motorist killed during a police pursuit under the Fourteenth Amendment's due process clause because there had been no seizure and thus the Fourth Amendment did not govern.  A seizure occurs only when there is a "governmental termination of freedom of movement through means intentionally applied." Id. (quoting Brower v. County of Inyo, 489 U.S. 593 (1989)).  In Lewis, police officers were in pursuit of a motorcycle at high speed when the motorcycle

overturned and a police car accidentally ran over one of the passengers who had been thrown from the motorcycle.  The Supreme Court held that there was no seizure because the defendant police officer had not intended to terminate the freedom of movement of the passengers on the motorcycle.  In other words, because the police officer had accidentally (rather than intentionally) struck the motorcycle, then there was no seizure.[5]

After deciding that the plaintiff's claim must proceed under the Fourteenth Amendment, the Supreme Court reiterated that the due process clause "does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." Id. at 848.  Instead, for the conduct of a state actor to give rise to liability under the due process clause, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Id. at 847 n.8 (citing Washington v. Glucksberg, 521 U.S. 702 (1997)).  In most contexts, what shocks the conscience is "deliberate indifference." Id. at 851.  But the Lewis Court announced a higher liability standard in

---

[5] Likewise, even if the Plaintiffs had asserted a Fourth Amendment violation here, the summary judgment evidence indicates that it would not be viable.  Assuming for the sake of argument that Sheriff Walker intentionally bumped Whitlock's vehicle in an attempt to terminate Whitlock's freedom of movement(though Sheriff Walker denies bumping the vehicle at all), there is no evidence that Walker intended to terminate the Plaintiffs' freedom of movement.

11

the context of high-speed police chases, likening them to prison
riots where prison officials "are supposed to act decisively and to
show restraint at the same moment, and their decisions have to be
made 'in haste, under pressure and frequently without the luxury of
a second chance.'" Id. at 853 (quoting Whitley v. Albers, 475 U.S.
312, 320 (1986)).  Accordingly, as in the context of prison riots
"in a high-speed automobile chase aimed at apprehending a suspected
offender ... *only a purpose to cause harm unrelated to the
legitimate object of the arrest* will satisfy the element of
arbitrary conduct shocking to the conscience necessary for a due
process violation."  Id. at 836 (emphasis added).  Because the
plaintiff in Lewis had not introduced evidence of an "improper or
malicious motive" unrelated to the legitimate object of the arrest,
the Supreme Court held that the officers were not liable for a due
process violation.  Id.

The outcome under Lewis is no different where a police officer
intentionally or accidentally bumps the pursued motorist.  Davis v.
Township of Hillside, 190 F.3d 167 (3d Cir. 1999); Helseth v.
Burch, 258 F.3d 867 (8th Cir. 2001).  In Davis, the defendant
officers attempted to stop motorist Cook for suspicious activity
but Cook sped away.  190 F.3d at 169.  During the course of the
ensuing pursuit, one of the police cars bumped into Cook's vehicle,
causing Cook to hit his head on the steering wheel and pass out.
Id.  Cook's vehicle then spun out of control and collided with two

12

other cars, one of which hit and injured the plaintiff who was standing nearby. Id. The Third Circuit affirmed a grant of summary judgment for the defendant officers against a § 1983 substantive due process claim, holding that the defendants' deliberate ramming of Cook's car did not permit an inference of intent to harm because it was related to the purpose of the chase and foreseeable under the circumstances. Id. at 171. Nor did the fact that the injured plaintiff was a bystander rather than the pursued suspect render Lewis distinguishable. Id. at 170 n.2 (citing Onossian v. Block, 175 F.3d 1169, 1171 (9th Cir. 1999)(applying Lewis to bystander injuries)).

Similarly, the Eighth Circuit followed Lewis in granting summary judgment to defendant officers against a § 1983 substantive due process claim where the officers had bumped repeatedly a fleeing suspect using "Pursuit Intervention Tactics" before the suspect ran a red light and collided with the plaintiffs' vehicle. Helseth, 258 F.3d at 869. The Court of Appeals held that because the officers bumped the fleeing suspect's vehicle in an attempt to stop it and apprehend the suspect, there was no intent to harm "unrelated to the legitimate object of arrest" and therefore no substantive due process violation. Id. at 872 (further noting that had the officers succeeding in stopping the fleeing suspect, they would have effected a seizure and been subject to a Fourth Amendment claim).

Here, the Plaintiffs have neither alleged nor submitted evidence to establish that Sheriff Walker acted with an intent to harm unrelated to his pursuit of escaped inmate Whitlock. Indeed, the Complaint alleges only that "Defendant Walker recklessly pulled in front of Defendant Whitlock's vehicle in an attempt to stop him." Complaint [docket entry no. 1-2] at ¶ 9. Pulling in front of Whitlock in an attempt to stop him, even if reckless, is consistent with Walker's legitimate interest in apprehending Whitlock. Moreover, none of the conflicting evidence cited by the Plaintiffs gives rise to a dispute of material fact with respect to Sheriff Walker's intent. No matter if Sheriff Walker was driving the speed limit or in excess, or whether he encountered traffic during the pursuit or not, or whether he bumped Whitlock's vehicle or not; there is no evidence that Sheriff Walker possessed any intent to harm unrelated to the pursuit of Whitlock. Accordingly, Sheriff Walker's conduct did not violate the due process clause of the Fourteenth Amendment and he is entitled to summary judgment on the § 1983 claims against him.

**C. State Law Claims**

The only claim that remains after the Plaintiffs' federal constitutional claims are dismissed is one under the Mississippi Tort Claims Act. This Court's jurisdiction over the Plaintiffs' state law claim rests on the invocation of supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because there is no

14

independent basis for jurisdiction over it.  Where federal claims are dismissed before trial, the state claims ordinarily should be dismissed as well.  <u>Wong v. Stripling</u>, 881 F.2d 200, 204 (5th Cir. 1989) (citing <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 724 (1966)).  Accordingly, because this action was removed to federal court from the Mississippi state court, the Court remands the Plaintiffs' claim under the Mississippi Tort Claims Act to the Circuit Court of Jefferson County, Mississippi.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [docket entry no. 87] is **GRANTED.**

**IT IS FURTHER ORDERED** that the Plaintiffs' claim under the Mississippi tort claims act will be remanded to the Circuit Court of Jefferson County, Mississippi by separate order.

**SO ORDERED** this 6th day of January 2011.


        s/ David Bramlette
**UNITED STATES DISTRICT JUDGE**